McINNIS, Judge.
The demand in this cause is for $976.57 damages alleged to have been sustained as the result of the loss of a deep water well, caused by explosions set off by defendant, its representatives or authorized agents, while engaged in seismographic exploration, near the property of plaintiff, oil which his well was located.
Defendant denies that its geophysical operations in the area of plaintiff’s farm caused any damage to plaintiff’s water well.
After trial on the merits the district judge, assigning his reasons orally, rendered and signed judgment in favor of plaintiff for the amount of his demand, and defendant has perfected a suspensive appeal to this court from the judgment.
The facts of this case are not in serious dispute. Plaintiff owns and operates and resides on a farm, about two miles north of Cheneyville, Rapides Parish, Louisiana. On the farm he had a water well some 416 feet deep, completed about 1937, from which he continuously used water, and from which two of his neighbors also used water. On June 9, 1951 and prior thereto the defendant, through its agents and employees, was engaged in geophysical operations in the area where plaintiff lived. These operations as conducted by defendant consisted of drilling holes in the ground and then setting off charges of explosives in the holes, and June 9, 1951 it set off explosions on land of John Compton, 910 feet north of plaintiff’s well.
A well belonging to John Compton and J. D. Hoyt, brother of plaintiff, was located about 189 feet from the explosions. Some four or five weeks after the explosions were set off trouble developed with both of these wells, and a settlement was made for the Compton and Hoyt well. *547 Plaintiff’s trouble with his well was caused by sand coming out with the water and this damaged his utilities such as washing machine and faucets on pipes, and after trying to repair the well or correct the trouble, without success, he had another well drilled about 20 feet from the old well and it produces good clear water in ample supply.
The only witness defendant offered was Mr. W. L. Cutrer, its agent to secure permits from landowners to set off explosions on their land'. His testimony is that no damage can occur to water wells located 400 feet and mo're away from the explosions, and for that reason plaintiff’s demand for a settlement was not enter-' tained. This witness did not know the depth of the hole in which the explosions were set off, and no other witness testified to the depth.
Mr. Cutrer is not an expert on such operations as were being carried on by defendant. He says it is customary to get 400 feet from water wells to set off explosive charges, on account of possibility of causing damage to the wells. He said in answer to a question: “We have our distance as 400 feet and we say we are not going to do any damage if we are 400 feet or further from a well.”
This witness was not present when the explosion was set off, and of course does not know how much explosive was used, nor how many shots were made in that particular hole.
Counsel for defendant stated that Mr. O. I. Janee, the party chief who did the shooting was ill, and asked to be allowed to take his deposition at a. later date. Counsel for plaintiff said there was no objection provided plaintiff was allowed to take depositions of experts, whereupon counsel for defendant replied: “In that event I will submit the case as it is.”
Mr. J. A. Thiels who drilled the new well for plaintiff in March, 1952, says he drilled to 416 feet where he encountered the same sand as the old well. He did no work on the old well, but checked it and it was making sand, which indicated something wrong with the screen. The screens have a back pressure valve, and something could have happened to the valve, such as a jar, or the plug might have been loosened. He also said sand could get in a well from other causes, such as a break in the pipe, however, he said the sand that was coming from the old well was the sand from which it was producing water, and for this reason he did not-believe it was caused by a break in the pipe. After the new well was completed he tried to pull the pipe from the old well, but it broke off about two feet from the top of the ground, and he was unable to get the pipe and screen out to find out what damage if any, had been done to them.
Plaintiff alleges the following acts - of negligence in Paragraph 5 of his petition:
“That the damages suffered by plaintiff were caused solely and wholly by, and as a result of, the acts of defendant’s employees and agents having the peculiar knowledge of the possible and probable results of such explosions to contiguous property and installations caused by the concussion and vibrations, of such explosions, and the risks of such results; that by exposing such contiguous property and installations to same, defendant is liable and responsible to the damages caused thereby and, in the alternative, if such be not the cause of the result of the risk assumed by such exploration, then in the alternative, such damages were suffered because of the negligence, carelessness and lack of proper precautions proper to have been exercised in such geophysical explorations, which in said alternative, will be shown on trial hereof.”
Under this pleading, and the evidence that the well had produced satisfactorily prior to the explosions, and that shortly thereafter the trouble developed, plaintiff invokes the doctrine of res ipsa loquitur, and says that the only burden on plain-: tiff is to show the damages, and the action of defendant, and the dangerous aspect of *548 such operation, from which the presumption of negligence on the part of defendant is drawn,- thus shifting the burden to defendant to .prove that ;such explosions could not have caused the damage. ;■
Defendant ’ contends that this ■ doctrine does not apply where an unexplained accident may be attributable to one of several causes, for some of which defendant is not', responsible.'" In Support "of the contention that the trouble 'with plaintiff’s w'éll could have been caused by some'other thing thaii the explosions, defendant cites the testimony of Mr. Thiels to the effect that sand might have entered the well through a split in the casing, or giving' away of the screen. ' '
We recognize the rule laid down in Anderson v. London Guarantee & Accident Co., Limited, La.App., 36 So.2d 741, and other cases to the effect that it is incumbent on a claimant invoking the doctrine of res ipsa loquitur to establish some negligence, and if he fails' to do so, there can be no recovery. On the' other hand; if fault of the defendant is established, and unless the redord shows that this fault is not a proximate cause of the damage, recovery should be allowed.
In the instant case, defendant knew it' was dealing with high explosives, and accordingly would not set off. explosions less than 400 feet from water wells without assuming to pay'for damages caused. This is, so far as the record discloses, an arbitrary distance. There is no evidence establishing the size of the charge set off on the Compton land. This information was exclusively within the knowledge of defendant.
We believe that the record supports the inference that plaintiff’s well was damaged by the explosion set off by defendant, and that defendant has produced no satisfactory evidence that the damage was not ■caused' thereby;
'For these reasons the judgment of the lower court is affirmed at the cost of defendant-appellant, in both courts.